IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION

| | |
|---|---|
| **Robert M. Lane**, ) | Civil Action No. 9:15-1740-RMG-BM |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **Dr. Vikki L. Lane, Bruce Glesby, Marisa** ) | |
| **Beuoy, David K. Pontes, John T. Rudnick,** ) | |
| **Carol Shick, Griffith & Thornburgh, LLP** ) | |
| **Kitch, Drutchas, Wagner, Valitutti &** ) | |
| **Sherbrook PC,** ) | |
| ) | |
| Defendants. ) | |
| _____) | |

    This action has been filed by the Plaintiff, a resident of Nevada, asserting various

claims for fraud, conspiracy, breach of contract, and other claims against various Defendants.

Plaintiff is proceeding pro se.

    The Defendants Pontes and the law firm Kitch, Drutchas, Wagener, Valitutti &

Sherbrook (hereinafter "Kitch") filed a motion to dismiss pursuant to Rule 12, Fed.R.Civ.P on June

4, 2015.  The Defendants Vikki Lane, Glesby, Beuoy, Shick and the law firm Griffith & Thornburg

(hereinafter "Griffith") also filed a Rule 12 motion to dismiss that same date.  As the Plaintiff is

proceeding pro se, a Roseboro order was entered by the Court on June 5, 2015, advising Plaintiff of

the importance of a dispositive motion and of the need for him to file an adequate response.  Plaintiff

was specifically advised that if he failed to file an adequate response, the Defendants' motions may

be granted.  Thereafter, the remaining Defendant John Rudnick also filed a Rule 12 motion to



1

dismiss on June 8, 2015.[1]

        Plaintiff filed a response in opposition to the motions to dismiss on July 9, 2015, to which the Defendants Vikki Lane, et. al. filed a reply memorandum with attached affidavit on July 10, 2015. The remaining Defendants also filed reply memoranda on July 20, 2015, while Plaintiff filed reply memoranda on July 24, 2015 and August 12, 2015.

        The Defendants' motions are now before the Court for disposition.[2]

### Allegations of the Complaint

        Plaintiff alleges in a thirty-six (36) page verified Complaint[3] that he is the sole beneficiary of two longstanding irrevocable spendthrift trusts, which have been "defrauded of tens of millions of dollars in assets" through the actions of the named Defendants. Specifically, Plaintiff alleges he is the sole beneficiary of the Boulder Investment Trust and the Riverbend Ranch Trust I, both of which are "Arizona irrevocable grantor trusts". Plaintiff alleges that the Boulder Trust's primary asset is a 100% ownership of Windriver Corp. of WY, LLC (a Delaware company), whose "sole manager was Patricia E. Lane, a South Carolina resident".[4] Plaintiff alleges a substantial part of the assets of the Riverbend Trust consists of shares in the Chatham Corporation (a Delaware

---

[1]Out of an abundance of caution, a second <u>Roseboro</u> order was entered by the Court on July 17, 2015 relating to Rudnick's motion.

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C. The Defendants have filed motions to dismiss. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by <u>pro se</u> litigants are to be considered as affidavits with respect to factual assertions contained therein. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).

[4]Neither the Windriver Corp. nor Patricia E. Lane are named Defendants in this action.

2



corporation), whose principle place of business is Ann Arbor, Michigan.

Plaintiff alleges that the Defendants Vikki Lane, Glesby, Beuoy, and Shick are all residents of California, while the Defendant Griffith law firm is alleged to be a limited liability partnership, also in California. The Defendant Pontes is alleged to be a citizen of Michigan, while the Defendant Kitch law firm is alleged to be a Michigan professional corporation. The Defendant Rudnick is alleged to be a citizen of Indiana. No party to this lawsuit is a resident or citizen of South Carolina. Nonetheless, Plaintiff asserts federal diversity jurisdiction in this case, and claims that venue is proper in this United States District Court because "[m]ultiple significant events giving rise to Plaintiff's claims occurred in Beaufort County, South Carolina . . . .". A review of the allegations of the Complaint does not, however, find support for this assertion.

Plaintiff alleges that he and the Defendant Vikki Lane were married on April 19, 1997, after signing a prenuptial agreement on April 15, 1997. Plaintiff alleges that thereafter the Defendant Vikki Lane filed a petition for dissolution of marriage in Santa Barbara, California on May 30, 2002, and that after he responded by filing a request for dissolution on July 12, 2005, the Defendant Vikki Lane "kidnapped" the couples' two minor children and relocated them to San Diego, California. Plaintiff alleges that shortly thereafter the Defendant Vikki Lane returned the children to Santa Barbara under court order, but that she and her attorney then "falsely claimed that [Plaintiff] was a terrorist who had perpetrated a terrorist act". Plaintiff alleges that, under California law, prenuptial agreements can be voided if one party is determined to be a terrorist. Plaintiff alleges that Vikki Lane subsequently dropped this "false claim".

Plaintiff alleges that the parties proceeded to litigate their divorce, in which Vikki Lane was represented by the Defendant Glesby, and which included claims and allegations regarding



ownership or control of the trusts at issue. Plaintiff alleges that the court issued its "statement of decision" on March 10, 2009, and that he thereafter filed for Chapter 7 bankruptcy in the District of Wyoming (where he resided at the time) on April 19, 2011. Plaintiff alleges further illegal or improper filings by Vikki Lane, which he alleges include "false claims" relating to the trusts at issue, and that Santa Barbara's district attorney's office is investigating the Defendant Glesby for perjury, with that investigation not yet having been completed. Plaintiff further alleges that the California Bar Association investigated Glesby for "elder abuse" after he threatened Plaintiff's eighty-one year old mother with the loss of her home in Hilton Head, South Carolina. Plaintiff also alleges that Vikki Lane and her attorney made false claims to the bankruptcy trustee in Plaintiff's case, thereby causing the bankruptcy trustee to bring numerous adversary proceedings and contempt charges against the Plaintiff and others "based upon the false and unsubstantiated allegations made by Defendants", and that on April 24, 2012 the Defendants Vikki Lane, Glesby and Beuoy filed a claim in the Plaintiff's bankruptcy proceedings for over a million dollars "in an attempt to benefit from their actions". Plaintiff alleges that, thereafter, in December 2012 DFWU, LLC[5] assigned over four hundred thousand dollars worth of shares to the Defendant Vikki Lane to satisfy the judgment against the Plaintiff, but that Vikki Lane, through her attorney, rejected this assignment.

Plaintiff alleges that on February 5, 2013 a "Turnover Agreement" was executed and a motion to have it approved by the U. S. Bankruptcy Court was filed the next day. Plaintiff alleges that this Agreement, which was signed by Matthew Lane (as trustee of the Riverbend Trust), Colleen

---

[5]This entity was apparently created by the Plaintiff on or about November 20, 2009, but it is unclear what this entity is. See Glesby Affidavit, ¶¶ 7, 10. However, it is not a South Carolina limited liability company and is not licensed to do business in the state of South Carolina. See Glesby Affidavit, ¶ 3.



Lane (as trustee of the Boulder Trust), and Patricia Lane (as manager of Windriver),[6] "turned over virtually all of the $40,000,000.00 plus in assets owned by the Boulder Trust, the Riverbend Trust and Windriver to the Bankruptcy Trustee . . . ." Plaintiff alleges that this "turn over is illegal and violates the Spendthrift Clauses of the Boulder and Riverbend Trust Agreements". Plaintiff also alleges that, even though he is the sole beneficiary of the Boulder and Riverbend Trusts, he was not informed of, nor involved in, the negotiation of the Turnover Agreement, with which he does not concur. Plaintiff alleges that this "fraudulent and illegal" Turnover Agreement was prompted by the actions of Vikki Lane "and her attorneys". Plaintiff alleges that on March 10, 2013, Vikki Lane and her attorneys then filed a motion for attorney's fees as sanctions, in which Glesby claimed under penalty of perjury that Plaintiff had concealed his pension and IRA, although Plaintiff alleges that his pension and IRA "have continuously been at the Bank of Jackson Hole and not been concealed". Plaintiff then details additional bankruptcy court filings, as well as his "third request" that the bankruptcy judge be removed from his case for "bias". Nonetheless, Plaintiff alleges that on June 11, 2013 the Court issued a sanctions order against him in the amount of $349,561.00.

Plaintiff alleges that on June 18, 2013, Vikki Lane filed an "Ex-Parte Motion" (apparently in the California Family Court) requesting that Plaintiff be denied access to his daughter on the grounds that he was "not a good parent", even though no such claim had been made with respect to his parenting skills relating to his son. Plaintiff alleges that that same month the Defendant Rudnick participated in a deposition, which "violate[d] his confidentiality agreement with the Boulder Investment Trust by discussing the business of the Trust", and in which Rudnick perjured himself by stating Plaintiff controlled the Boulder Trust. Plaintiff alleges that Rudnick's

---

[6]None of these individuals are named as Defendants in this case.



"false statements" played a part in the fraudulent turnover of over forty million dollars in assets in the Boulder and Riverbend Trusts and the Windriver Corporation. Plaintiff then details additional filings with respect to the custody battle involving his daughter.

Plaintiff alleges that on June 20, 2013, the Bankruptcy Court approved the Turnover Agreement, which "fraudulently" turned over in excess of forty million dollars in assets "based upon Defendants' false and fraudulent claims". Plaintiff further alleges that, subsequently, the Bankruptcy Court on July 1, 2013 rejected his motion to disqualify the judge for bias. Plaintiff alleges that on July 23, 2013, "the Court"[7] filed a "Minute Order" granting Vikki Lane custody of the daughter, with "supervised visitation" for the Plaintiff along with a custody evaluation.

Plaintiff alleges that in autumn 2013, Vikki Lane filed a lawsuit in Beaufort County Circuit Court (Case No. 13-CP-07-2997) against the Plaintiff, DFWU, LLC, Patricia E. Lane and Patricia A. Lane, in which Vikki Lane "is attempting to seize the proceeds of a loan made by DFWU, LLC to Patricia E. Lane falsely arguing that it is [Plaintiff's] property". Plaintiff alleges that this case in Beaufort County is still pending. Plaintiff also alleges that on November 7, 2013, Vikki Lane filed a ex-parte motion in California for a writ of seizure to seize Plaintiff's car and assets. Plaintiff further alleges that "the Defendants seized assets belonging to [Plaintiff] and third parties including an automobile owned by [Plaintiff's] son Charles. Many of these assets were no longer protected by the Trust as a result of the fraudulent turnover engineered by the Defendants". Plaintiff alleges that in 2014, Vikki Lane filed writs of garnishment in Teton County District Court in Jackson, Wyoming, and further alleges that during a trial on September 4, 2014, the Defendant Glesby

---

[7]Here, Plaintiff is apparently referring to the California Family Court, not the Wyoming Federal Bankruptcy Court.



perjured himself by claiming that Plaintiff paid over four hundred thousand dollars in cash to acquire art, and that Glesby also claimed that Plaintiff was insolvent at the time of the purchase, contrary to his arguments in Santa Barbara Superior Court months earlier, when he had argued that Plaintiff had the ability to pay $349,561 in legal fees.

In **Count One** of his Complaint, Plaintiff alleges a claim for fraud against the Defendants Vikki Lane, Glesby, Beuoy, Shick, Rudnick, and the Griffith law firm based on alleged false and perjured statements made in order to defraud him of more than forty million dollars in assets. Plaintiff alleges that the Defendants communicated these false statements in written communications and emails to the Wyoming Bankruptcy Trustee and his attorneys. Plaintiff alleges that as a result of this fraudulent conduct, over forty million dollars in assets in which he had an equitable interest as a beneficiary of the Boulder and Riverbend Trusts and the Windriver Corporation were turned over to the United States Bankruptcy Trustee for the United States Bankruptcy Court for the District of Wyoming.

In **Count Two** of his Complaint, Plaintiff alleges a claim of conspiracy to commit fraud against the Defendants Vikki Lane, Glesby, Beuoy, Shick and the Griffith law firm, based on their alleged "conspiracy and multiple false and fraudulent statements" made to the U. S. Bankruptcy Court and U. S. Bankruptcy Trustee.

In **Count Three** of his Complaint, Plaintiff asserts a claim for perjury against the Defendants Vikki Lane, Glesby, Beuoy, Rudnick and Shick relating to the "multiple false and fraudulent statements" made by these Defendants to the U. S. Bankruptcy Trustee and the U. S. Bankruptcy Court in the District of Wyoming. Plaintiff further alleges that the Defendants committed perjury in Michigan by falsely claiming that the Plaintiff owned the Chatham Capital

7



Shares, when the Defendants were fully aware (and had stated in court previously) that the shares were owned by the Riverbend Ranch Trust. Plaintiff further alleges that the Defendant Glesby perjured himself in South Carolina by claiming under oath that the Defendant had refused to pay his child support.

In **Count Four** of his Complaint, Plaintiff alleges a claim for malicious and fraudulent prosecution against the Defendants Vikki Lane, Glesby, and Pontes. Plaintiff alleges in this Count that the Defendants "falsely claimed in Michigan that [Plaintiff] owned the Chatham contrary to their clam in California that the shares were owned by the Riverbend Ranch Trust 1". Plaintiff alleges that the Defendants also asserted a right to garnish tax distributions due from Chatham even though they knew that these were not the Plaintiff's property. Plaintiff further alleges that the "Defendants" prosecuted claims against him in South Carolina knowing that the Plaintiff did not own the assets that they were seeking (a loan from DFWU to Patricia Lane) and that this claim was further "falsely prosecuted" in South Carolina because DFWU, LLC was not a South Carolina entity, was not located in South Carolina, and never did any business in South Carolina. Plaintiff alleges that he incurred significant legal fees and expenses as a result of the Defendants malicious prosecution of their claims.

In **Count Five** of his Complaint, Plaintiff alleges a claim of fraud and breach of contract against the Defendant Vikki Lane, in which he alleges that Vikki Lane breached the terms of their prenuptial agreement by pursuing claims against him in Wyoming, Michigan, South Carolina and California.

In **Count Six** of his Complaint, Plaintiff asserts a claim for "use of legal filings for an improper purpose" against the Defendants Vikki Lane and Glesby, arguing that these Defendants



have filed numerous motions and civil suits for an improper purpose, namely harassment, in Michigan, Wyoming, South Carolina and California, causing Plaintiff significant financial and emotional damages.

In **Count Seven** of the Complaint, Plaintiff asserts a claim for "failure to supervise and assure competence of attorney and employees" with respect to the Griffith law firm. Specifically, Plaintiff alleges that the Griffith law firm "participated in the fraud by failing to exercise its duty to properly supervise its attorneys and employees, Bruce Glesby, Marisa Beuoy and Carol Shick in performance of their legal representation . . . .". Plaintiff alleges that the Griffith law firm owed a duty to properly supervise its attorneys and employees, and that it failed to do so.

In **Count Eight** of the Complaint, Plaintiff alleges the same claim against the Kitch law firm with respect to its attorney David Pontes.

Plaintiff seeks monetary damages and related relief. See generally, Plaintiff's Verified Complaint.

### Discussion

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters in the Complaint to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Additionally, the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case; see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972); and as the Plaintiff is proceeding pro se, his pleadings are considered pursuant to this liberal standard.

9



Even so, after careful review and consideration of the allegations of the Complaint and the arguments and exhibits presented, the undersigned finds for the reasons set forth hereinbelow that the Defendants are entitled to dismissal of this case. The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the Court assume the existence of a genuine issue of fact where none exists. Weller v. Dept. of Social Services, 901 F.2d 387 (4th Cir. 1990); see generally, Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)["While the pleading standard is a liberal one, bald assertions and conclusions of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.]; Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"].

## I.

With respect to the Defendants Pontes and the Kitch law firm, the only claim against Pontes is for malicious and fraudulent prosecution, while the only claim against Kitch is for fraud and failure to supervise and assure the competence of Pontes, its employee. See Complaint, Counts Four and Eight. These claims all relate to work that Pontes and Kitch performed in the State of Michigan to collect on a judgment that had been entered against the Plaintiff in California relating to his divorce from the Defendant Vikki Lane. See Complaint, ¶ ¶ 20, 62, 63, 64. As such, Pontes and Kitch assert that they are both entitled to dismissal for lack of personal jurisdiction, as Plaintiff's claims do not arise from any alleged activity of the Defendants in the State of South Carolina, nor do the Defendants have contacts with the State of South Carolina sufficient for the exercise of



personal jurisdiction.[8]  The undersigned is constrained to agree.

A federal court may exercise personal jurisdiction over a Defendant in the manner provided by state law. Rule 4(k)(1)(A), Fed.R.Civ.P.; <u>ESAB Group, Inc. v. Centricut, Inc.</u>, 126 F.3d 617, 622 (4th Cir. 1997). To establish personal jurisdiction over a non-resident Defendant in South Carolina, a Plaintiff must show 1) that there is statutory authority for the exercise of personal jurisdiction under South Carolina law, and 2) that the exercise of jurisdiction comports with the federal constitutional standards of due process. <u>Wolf v. Richmond County Hospital Authority</u>, 745 F.2d 904, 909 (4th Cir. 1984); <u>SubAir Systems, LLC v. PrecisionAire Systems, Inc.</u>, No. 06-2620, 2007 WL 28229010 at * 1 (D.S.C. Sept. 27, 2007); <u>Carefirst of Maryland v. Carefirst Pregnancy Ctrs.</u>, 334 F.3d 390, 396 (4th Cir. 2003).  When personal jurisdiction is challenged pursuant to Rule 12(b), the Plaintiff has the burden of showing that jurisdiction exists. <u>In re Celotex Corp.</u>, 124 F.3d 619, 628 (4th Cir. 1997). Although, since no evidentiary hearing had been held in this matter, Plaintiff need only make a <u>prima facie</u> showing of personal jurisdiction; <u>SubAir Systems</u>, 2007 WL 2822910, at ** 1, 3; Plaintiff has failed to make even a <u>prima facie</u> showing that personal jurisdiction is proper in this case.  <u>See also Carefirst of Maryland</u>, 334 F.3d at 396.

South Carolina statutes provide that personal jurisdiction may be either "general" or "specific".  <u>Coggeshall</u>, 655 S.E.2d at 478.  Pursuant to S.C.Code Ann. § 36-2-802, in order to exercise "general" personal jurisdiction over a Defendant, the Defendant must be domiciled in, be organized under the laws of, be doing business in, or maintaining his principal place of business in

---

[8]While these Defendants, as well as the other Defendants, assert numerous arguments and grounds for dismissal of this case, the undersigned has only discussed such defenses in this Report and Recommendation as are necessary to resolve the motions.



South Carolina.

> General jurisdiction applies to defendants who have purposefully established "continuous and systematic" contacts in the forum state." <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416(1984). Due Process precludes the exercise of general jurisdiction unless the plaintiff shows that the defendant has an "enduring relationship" with the forum state. <u>Dtex</u> [<u>LLC v. BBVA Bancomer, S.A.</u>], 405 F.Supp.2d [639] at 644 [(D.S.C. 2005)] (citing <u>Brown v. Geha–Werke GmbH</u>, 69 F.Supp.2d 770, 779 (D.S.C.1999)); <u>Coggeshall v. Reprod. Endocrine Assocs. of Charlotte</u>, 655 S.E.2d 476, 479 (S.C.2007) ("[G]eneral jurisdiction is based upon 'an enduring relationship' with the State ."). Because general jurisdiction justifies suit against a defendant on any cause of action, including one totally unrelated to the defendant's contacts with South Carolina, the defendant must have truly significant, meaningful contacts with the State. <u>See</u> <u>Cockrell v. Hillerich & Bradsby Co.</u>, 611 S.E.2d 505, 510 (S.C.2005) ("These contacts must be 'so substantial and of such a nature as to justify suit against [the respondents] on causes of action arising from dealings entirely different from those activities.' ") (quoting <u>Int'l Shoe Co. [v. Washington</u>], 326 U.S. [310] at 318 [(1945)]).

<u>Scansource, Inc. v. Mitels Network Corp.</u>, No. 11-382, 2011 WL 2550719 at *3 (D.S.C. June 24, 2011).

Plaintiff is a citizen of Nevada, Vikki Lane is a citizen of California, Pontes is a citizen of Michigan, and Kitch is a professional corporation located in Michigan. Further, Plaintiff himself specifically alleges in his Complaint that the conduct of Pontes and Kitch was "carried out in connection with litigation taking place in Michigan", and is governed by Michigan law. <u>Id.</u>, pp. 2-6. <u>See also</u> <u>Zitterman Affidavit</u>.[9] Hence, neither Pontes nor Kitch meets the requirements for the exercise of general jurisdiction against them. <u>See generally</u>, <u>Zitterman Affidavit</u>; <u>Pontes Affidavit</u>. Indeed, Plaintiff himself concedes that he may not have personal jurisdiction against the Defendant

---

[9]In considering a motion challenging personal jurisdiction, the court may consider facts outside of the complaint, including affidavits. <u>Coggeshall v. Reproductive Endocrine Associates</u>, 655 S.E.2d 476, 478 (S.C. 2007)["When a motion to dismiss attacks the allegations of the complaint on the issue of jurisdiction, the court is not confined to the allegations of the complaint but may resort to affidavits or other evidence to determine jurisdiction."]



Pontes, although he contends in an affidavit attached to his responses to the Defendants' motions that the Kitch law firm could be subject to jurisdiction in South Carolina because "one or several of its principals have made presentations at seminars in South Carolina including Charleston", and that the "Kitch law firm represents South Carolina clients including Owens Corning that operates in the South Carolina cities of Aiken, Anderson, Duncan and Star". See Plaintiff's Affidavit; see also Court Docket No. 47, p. 12. As such, Plaintiff appears to be arguing that Kitch's activities satisfy the "doing business" requirement under the general jurisdiction statute.

However, just because the Kitch law firm may (assuming Plaintiff's statement to be true) represent clients who have subsidiary operations in South Carolina does not mean that the Kitch law firm can be sued in South Carolina. For example, just because a Michigan law firm might represent and do work for Bank of America in Michigan does not mean that that law firm could then be sued in South Carolina for something they did in Michigan, just because Bank of America also operates in South Carolina. As for Plaintiff's claim that "principals" of the Kitch firm have participated in seminars in South Carolina, Plaintiff has not alleged facts sufficient to show an enduring relationship with South Carolina or the necessary "continuous and systematic" contacts to warrant an award of general jurisdiction in South Carolina against this law firm. Scansource, 2011 WL 2550719, at * 3 [Defendant must have "truly significant, meaningful contacts with the State" to justify a grant of general jurisdiction]. To the extent that Plaintiff is attempting to argue that South Carolina's long arm statute should be applied, Plaintiff has again not made the necessary showing. See Moosally v. W.W. Norton & Co., Inc., 594 S.E.2d 878, 884-885 (S.C.Ct.App. 2004). See also "specific jurisdiction" discussion hereinbelow, infra.

With respect to "specific" personal jurisdiction, this jurisdiction may be obtained



where the Plaintiff's cause of action arises from a Defendant's forum related activities. <u>Coggeshall</u>, 655 S.E.2d at 478. Specific jurisdiction can only be exercised over "a defendant that purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." <u>Informaxion Solutions, Inc. v. Vantus Group</u>, No. 15-290, 2015 WL 3767456 at * 2 (D.S.C. June 17, 2015). Further, South Carolina's long arm statute relating to specific jurisdiction, S.C.Code Ann. § 36-2-803, requires that non-resident Defendants have sufficient minimum contacts with South Carolina so that maintenance of the action "does not offend traditional notions of fair play and substantial justice." <u>Atlantic Soft Drink Co. of Columbia, Inc. v. South Carolina National Bank</u>, 336 S.E.2d 876, 878 (S.C. 1985), quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).

Here, Plaintiff has not provided sufficient facts to support an assertion of specific personal jurisdiction over either Pontes or Kitch, as Pontes had no connection whatsoever to South Carolina, while Kitch's only contact (according to the Plaintiff) may have been when some of its principals participated in one or more seminars in South Carolina, the number and times of which are unknown and which have not even been alleged to relate in any way to be the subject matter of this lawsuit. Furthermore, neither of these Defendants has committed a tort in this state. Therefore, there are no facts supporting the exercise of specific jurisdiction based on these scant alleged contacts, which are unrelated to the conduct which is the basis of this lawsuit, to satisfy the necessary due process showing under the power and fairness analysis. <u>Moosally</u>, 594 S.E.2d at 884-885; <u>Atlantic Soft Drink Co.</u>, 336 S.E.2d at 878 [non-resident Defendant must have sufficient minimum contacts with South Carolina that maintenance of an action against them "does not offend traditional notions of fair play and substantial justice"]; <u>Coggeshall</u>, 655 S.E.2d at 478 [For specific jurisdiction

14



to attach, Plaintiff's course of action must arise out of the Defendant's forum related activities].[10]

---

[10]In any event, Kitch also correctly notes that it is also entitled to dismissal under South Carolina Code Ann. § 15-5-150 [the Door Closing Statute], which precludes a non-resident Plaintiff from maintaining an action in South Carolina against a foreign corporation on an action that arose outside of South Carolina.

> "Pursuant to the Door Closing Statute, a non-South Carolina resident cannot bring an action in South Carolina when the cause of action did not arise within South Carolina." Snell v. Golden Rule Ins. Co., No. 6:08–3555–HMH, 2009 WL 185723, at *2 (D.S.C. Jan.23, 2009). "In traditional tort settings, we have held that a cause of action arises in this State for purposes of the Door Closing Statute when the plaintiff has the right to bring suit." Murphy v. Owens–Corning Fiberglass Corp., 590 S.E.2d 479, 482 (S.C.2003) (citation omitted). "Federal courts sitting in diversity must apply [Door Closing Statute] unless countervailing federal interests preclude its application". Tuttle Dozer Works, Inc. v. Gyro–Trac (USA), Inc., 463 F.Supp.2d 544, 549 (D.S.C.2006) (citation omitted). In Szantay v. Beech Aircraft Corp., 349 F.2d 60 (4th Cir.1965), the Fourth Circuit recognized certain countervailing considerations. These considerations include:

> (1) the purpose in the grant of diversity jurisdiction of avoiding discrimination against nonresidents; (2) the policy of encouraging a state to enforce the laws of its sister states; and (3) the fact that South Carolina was the only state in the country in which the two defendants could be joined.

> Proctor & Schwartz, Inc. v. Rollins, 634 F.2d 738, 740 (4th Cir.1980). However, "the Fourth Circuit Court of Appeals has ... limited the need to apply Szantay balancing to situations in which a plaintiff has no other available forum in which to bring its action." Cal. Buffalo v. Glennon–Bittan Group, Inc., 910 F.Supp. 255, 257 (D.S.C.1996). "A plaintiff's failure to timely file suit in the more logical, convenient forum does not constitute a countervailing consideration favoring the exercise of federal jurisdiction." Rollins, 634 F.2d at 740.

Conner v. Techtronic Industries North America, Inc., No. 13-2353, 2015 WL 3871889 at * 2 (D.S.C. June 23, 2015).

Here, any actions the Kitch law firm took involving the Plaintiff occurred in the state of Michigan. Therefore, the Court need not conduct a Szantay analysis because there is another available forum. Furthermore, the fact that Plaintiff may potentially face some type of procedural bar in that other forum does not constitute a countervailing consideration favoring the exercise of federal jurisdiction. Conner v. Techtronic Industries North America, Inc., 2015 WL 3871889 at * 4.

(continued...)



Therefore, Pontes and the Kitch law firm are entitled to dismissal as party Defendants in this case.

## II.

The Defendant John Rudnick asserts that he is entitled to dismissal as a party Defendant, inter alia, for the same reason that Pontes is entitled to dismissal, and the undersigned agrees. Plaintiff alleges that the Boulder Investment Trust (an Arizona irrevocable grantor trust) was formed on May 21, 2000, with Plaintiff being named as the sole beneficiary and Rudnick being named as the Trustee. See Complaint, ¶¶ 30, 32. Rudnick is a citizen and resident of Indiana. See Complaint, ¶ 8. Plaintiff alleges that on April 22, 2008, Rudnick provided written testimony under oath as Trustee of the Boulder Trust in a divorce proceeding between Plaintiff and his ex-wife in Santa Barbara, California. Id., ¶ 52. Rudnick thereafter resigned from his position as Trustee in October 2008. See Rudnick Exhibit A, ¶ 7 [Copy of State Court Order granting summary judgment]. Plaintiff alleges that Rudnick was then later deposed on June 7, 2012 as part of Plaintiff's bankruptcy proceeding in Wyoming. Complaint, ¶¶ 58, 86-88; see also Rudnick Exhibit A, ¶¶ 8, 9.[11] The records provided to the Court also show that Plaintiff previously brought an action against Rudnick in Indiana State Court in June 2014, in which he asserted claims for breach of fiduciary duty against Rudnick based on this same declaration of April 2008 and deposition testimony of June 2012, and

---

[10](...continued)
Accordingly, Plaintiff's claims against Kitch are barred in this State under § 15-5-150. See Proctor & Schwartz v. Rollins, 634 F.2d 738, 739 (4th Cir. 1980).

[11]Rudnick notes that Plaintiff's Complaint contains a scrivener error. The Complaint alleges that the deposition occurred in June 2013, when it actually occurred in June 2012.

on which Rudnick was granted summary judgment.  See Rudnick Exhibits A and B.

As was the case with Plaintiff's previous law suit in Indiana, Plaintiff alleges in the case at Bar that Rudnick perjured himself and violated his confidentiality agreement by providing a sworn affidavit in California in 2008 and in his deposition testimony in the Wyoming bankruptcy proceeding in 2012.  While Plaintiff tries to argue that his claims against Rudnick here are not these same claims, he states in his affidavit that Rudnick's "false representations" under oath caused $40 million in assets to be fraudulently conveyed, referencing these same sworn statements.  See Plaintiff's Affidavit, ¶ 29; see also, Plaintiff's Second Affidavit (attached to Court Docket No. 56), ¶ 12.  In any event, there are no allegations in the Complaint which connect the allegedly improper activities or conduct by Rudnick to South Carolina.  The only contact Plaintiff discusses in his affidavit connecting Rudnick with South Carolina is that Rudnick is the previous Trustee (until 2008) of the Boulder Investment Trust, which owned the Windriver Corp., and that as Trustee he oversaw those entities' investments, which included an investment in a condominium located in the Shipyard Plantation on Hilton Head Island.

However the Fourth Circuit has held that, "[t]hough not determinative of the issue, . . . under South Carolina law, the mere ownership of real or personal property by a foreign corporation, without more, does not constitute the transaction of business within the state."  Sea Marsh Group, Inc. v. SC Ventures, Inc., Nos. 94-1140, 96-1524, 1997 WL 173232 (4th Cir. Apr. 11, 1997)(citing S.C. Code Ann. § 33-15-101(b)(9)(1990))[upholding the district court's finding that the acts performed in that case "were ministerial in nature, designed primarily-if not exclusively-to protect its ownership interest."].  There are no allegations to show that any acts of the Boulder Investment Trust and/or the Windriver Corporation regarding the Hilton Head Island investment



were anything other than, at most, ministerial in nature and/or the actions of a passive investor. Accordingly, even if these foreign entities (the Boulder Trust and/or the Windriver Corp.) owned trust property in South Carolina, that, without more, would not qualify either entity as "doing business in South Carolina" for purposes of an unrelated claim, even assuming either of these entities was a named Defendant in this case (which neither is).

In addition, Rudnick's role as mere trustee of the Boulder Trust is even further removed. Plaintiff has not made any allegation that Rudnick personally had an interest in, used, or possessed real property in South Carolina so as to satisfy the requirements for personal jurisdiction under S.C. Code § 36-2-802 (1976). Rather, Plaintiff's allegations concern Rudnick's actions as a Trustee or (alleged) fiduciary. However, Rudnick's alleged fraudulent activity as set forth in the Complaint (his sworn statements and testimony) did not occur in South Carolina, and his role as the trustee of the Boulder Investment Trust (which itself ended in 2008), without more, does not subject him to general jurisdiction in this state based on the allegations asserted against him in this Complaint.[12] As such, Rudnick is not subject to general personal jurisdiction in South Carolina. See S.C.Code Ann. § 36-2-802.

Rudnick is also not subject to specific personal jurisdiction in South Carolina, as the allegations of the Complaint fail to show that he has committed a tort in this state, personally entered

---

[12] The only other connection to South Carolina (again, assuming the truth of Plaintiff's affidavit statements) appears to be that one of the assets "turned over" by the Boulder Trust pursuant to the "Turnover Agreement" was a South Carolina asset (apparently a condominium). Plaintiff's Affidavit, ¶ 25. However, that was in 2013, well after Rudnick was no longer the Trustee of the Trust. In fact, Plaintiff specifically alleges in his Complaint that the Turnover Agreement was signed by Colleen Lane as Trustee of the Boulder Trust, not by Rudnick. Complaint, ¶ ¶ 74-75. Colleen Lane is not a Defendant in this case.



into a contract to be performed in this state, or transacted business in this state sufficient to meet the "minimum contacts" necessary. As previously noted, S.C.Code Ann. § 36-2-803 requires that a non-resident Defendant have sufficient minimum contacts with South Carolina so that the maintenance of an action against them in this state "does not offend traditional notions of fair play and substantial justice". Atlantic Soft Drink Co., 336 S.E.2d at 878. As such, Plaintiff must show a "sufficient connection between the defendant and the forum state to make it fair to require defense of the action in the forum". Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc., 784 F.Supp. 306, 312-313 (D.S.C. 1992), quoting Kulko v. California Superior Court, 436 U.S. 84, 91 (1978). The undersigned does not find that Plaintiff's bare statement in his affidavit about the Boulder Trust having, as one of its assets, a condominium in South Carolina while Rudnick (an Indiana resident) was trustee of the Trust, and which was (apparently) "turned over" by the Trust in 2013 (five years after Rudnick had left his position with the Trust) pursuant to an order of a Wyoming Bankruptcy Court, which in turn (according to Plaintiff's allegations) was based, at least in part, on fraudulent and improper sworn statements made by Rudnick in California and Wyoming, shows a "sufficient connection between the Defendant and the forum state to make it fair to require" Rudnick, a resident of Indiana, to defend this action in South Carolina. Magic Toyota, Inc.., 784 F.Supp. at 312-313; Informaxion Solutions, 2015 WL 3767456, at * 2 [Exercise of specific jurisdiction requires that a Defendant purposely direct activities toward the forum state and that the litigation result from alleged injuries arising out of or relating to those activities].

Therefore, Rudnick is entitled to dismissal as a party Defendant in this case.

### III.

With respect to the remaining Defendants, Plaintiff's claims are subject to dismissal



for a variety of reasons.

First, Plaintiff's claims clearly go to the loss of trust assets to which Plaintiff alleges he is entitled. However, the "Turnover Agreement" to which Plaintiff repeatedly refers in his Complaint was (as is acknowledged by Plaintiff in his Complaint) approved by the United States Bankruptcy Court for the District of Wyoming on June 20, 2013; Complaint, ¶ 91; see also Exhibit A to Vikki Lane, et al., motion to dismiss [Order approving settlement agreement]; and pursuant to that order, that Bankruptcy Court specifically "retain[ed] jurisdiction to adjudicate any disputes under the [Turnover] Agreement and to enter orders specifically enforcing its terms." Exhibit A, p. 10, ¶ 32. Hence, the United States Bankruptcy Court for the District of Wyoming retains the exclusive jurisdiction to handle any claims by Plaintiff of fraud in the procuring of the Turnover Agreement. In re White v. Robinson, 777 F.3d 792, 796 (5th Cir. 2015) ["Unless a bankruptcy court's ruling is stayed pending appeal, that court retains jurisdiction to engage in proceedings to enforce its own rulings"]; see also 28 U.S.C. § 1334(e)(1) ["The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction - - (1) of all the property, wherever located, of the debtor as of the commencement of such, and of property of the estate . . ."]. Plaintiff's bankruptcy case has not been closed, and Plaintiff concedes he is still under that Court's jurisdiction with respect to the assets at issue. See Plaintiff's Affidavit, ¶¶ 4-5. Hence, that Court is where Plaintiff needs to litigate his fraud claims relating to those assets.

Further, even if this Court were to find that Plaintiff had otherwise asserted viable claims against these Defendants; but see, discussion, supra; venue for this case is not proper in this

20



District.[13]  Plaintiff alleges that venue is proper in the District of South Carolina under 28 U.S.C. §

1391(b).  However, § 1391(b)(2)[14] provides that "[a] civil action may be brought in . . . a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action situated . . . .".  Plaintiff's allegations fail

to meet either of these requirements.  While Plaintiff alleges that "[m]ultiple significant events

giving rise to Plaintiff's claims occurred in Beaufort County, South Carolina . . . ."; Complaint, ¶ 16;

the only action involving South Carolina alleged in the Complaint is that, in the fall of 2013, the

Defendant Vikki Lane brought a law suit in state court in Beaufort County, South Carolina (which

is still pending) in which she is attempting to seize the proceeds of a loan made by DFWU, LLC to

Patricia E. Lane.  However, in addition to neither DFWU, LLC or Patricia E. Lane being parties to

this lawsuit, it is not even clear what this lawsuit has to do with the allegations and claims Plaintiff

is raising in this Complaint, which relate to (according to the Plaintiff) over $40 million in assets of

various trusts (all of which, except for apparently a condominium on Hilton Head Island, are outside

of South Carolina), and a custody dispute involving minor children in California.

        Conversely, Rudnick is a citizen of Indiana, and has no connection to this Beaufort

County lawsuit.  Kitch, and its attorney Pontes, are both situated in Michigan and similarly have

nothing to do with this Beaufort County lawsuit.  The Griffith law firm and its attorneys Glesby,

Beuoy and Shick are all in California, and none of these attorneys or entities represent Vikki Lane

in this lawsuit in Beaufort County, South Carolina.  Indeed, Plaintiff specifically concedes in his

---

    [13]When considering the question of venue under Rule 12(b)(3), a court may consider facts beyond the complaint.  Moore v. AT&T Latin Am. Corp., 177 F.Supp.2d 785, 788 (N.D.Ill. 2001).

    [14]The requirements of 28 U.S.C. § 1391(b)(1) do not apply in this case.



affidavit that "[t]here is no evidence that attorney Defendants B. Glesby, M. Beouy, or D. Pontes represented Dr. V. Lane in any of the fraud or malicious prosecution [Vikki Lane] perpetrated in South Carolina"; Plaintiff's Affidavit, ¶ 20; while Shick is not even mentioned. Further, neither the Boulder Trust or Riverbend Trust, the disposition of the assets of which Plaintiff is contesting in this federal lawsuit, are located in South Carolina. Additionally, the assets of these trusts (except for possibly a condominium in Hilton Head) are not located in South Carolina [15], and as has been previously noted, claims relating to the assets of the trusts at issue remain under the jurisdiction of the United States Bankruptcy Court in Wyoming. Nor do any of the proceedings, claims or rulings relating to Plaintiff's California divorce proceedings and/or custody decisions have anything to do with South Carolina.

In sum, and according to the Complaint, Plaintiff is a Defendant in a state court case in Beaufort County, which is ongoing. Whatever the merits of Vikki Lane's claim in that lawsuit relating to the particular loan at issue, Plaintiff may litigate those issues in that case. However, he has failed to set forth any basis in his Complaint, or in his affidavits attached to his responses to the Defendants' motions, to show that venue over the claims he is asserting in this federal law suit is proper in the District of South Carolina based on that Beaufort County case. Plant Genetic Systems, NV v. Siba Seeds, 933 F.Supp. 519, 526 (M.D.N.C. 1996) [It is the Plaintiff who bears the burden of establishing that venue is proper in the judicial district in which the Plaintiff has brought an action in response to a Rule 12(b)(3) motion to dismiss]; 28 U.S.C. § 1391(b)(2) [In order for venue to be

---

[15]While Plaintiff alleges that Windriver Corp. of WY, LLC, which is a "primary asset" of the Boulder Trust, is managed by Patricia E. Lane, who is a South Carolina resident, Windriver Corp. is itself alleged to be a Delaware company. In any event, neither Windriver Corp. nor Patricia E. Lane are parties to this lawsuit.



proper, a substantial part of the events or omissions giving rise to the claim must have occurred in the judicial district in which the action is brought, or a substantial part of property that is the subject of the action is situated].

Therefore, Vikki Lane, Glesby, Beuoy, Shick and the Griffith law firm are entitled to dismissal of this case.

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motions to dismiss be **granted,** and that this case be **dismissed**, without prejudice. Plaintiff may then pursue his various claims against these Defendants in the proper jurisdictions or venues, if he chooses to do so.[16]

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 9, 2015
Charleston, South Carolina

---

[16]Plaintiff also has a motion for Preliminary Injunction pending. See Court Docket No. 4. As a result of the recommendation set forth herein, that motion should be **denied**. See also, Court Docket Nos. 40 and 44.

23



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

24

